## GUARDIAN MANAGEMENT CORPORA-TION v. HUFFMAN.

### No. 676.

Municipal Court of Appeals for the District of Columbia.

Sept. 21, 1948.

John R. Walker, of Washington, D. C., for appellant.

F. H. Livingstone, of Washington, D. C. (Paul J. Sedgwick, of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellant sued appellee in the Muncipal Court to recover premiums allegedly due on various automobile insurance policies. Appellee, a resident of Prince Georges County, Maryland, operates a fleet of taxicabs. Since appellee is a non-resident of the District of Columbia appellant sought to enforce its claim by levying an attachment before judgment as authorized by the D. C. Code.[1] The attachment was levied upon one of appellee's taxicabs in the District of Columbia. Thereafter in order to obtain the release of the taxicab for use in his business, appellee secured a court order permitting him to pay into the registry of the court $650 in cash in lieu of the

---

[1] Code 1940, § 16—301 et seq.

attached automobile. Having made such deposit appellee filed a motion to set aside the attachment and to release the "bond" (as the cash deposit was called) on the ground that the levy of the attachment was obtained by trickery. Upon the basis of the affidavits filed by both parties the trial court granted the motion and ordered the cash "bond" returned. It is from this order that the present appeal is taken.

As shown by the finding of the trial court, service of the attachment before judgment was obtained in the following manner: The driver of the taxicab in question was in appellee's dispatching office at Suitland, Maryland, when a man rushed into the office and stated that he wanted a cab to go to the Union Station in the District "right away." The dispatcher thereupon told the driver to take the man on the trip. On the way to the Union Station this man stated to the driver that he had forgotten some papers and asked that he be taken to his office in the vicinity of 4th and E Streets, N. W. When they reached that point (where the Municipal Court is located), the man got out of the cab stating "I'll be right back." Thereupon all the doors of the cab were opened and the driver was told to get out. One of the men opening the doors showed a badge and stated he was a United States marshal and that the cab was being attached. One of the men paid the driver the fare for the trip. These facts are not seriously controverted by appellant, although it urges that the transaction was entirely legal since appellee as a common carrier of passengers for hire was bound to carry appellant's representative into the District when requested to do so.

In urging reversal of the trial court's order appellant first claims that the service of the attachment was not obtained by trickery or misrepresentation. We have no doubt, however, that the trial court ruled correctly on this point. The facts as presented could lead only to the inference that the person who enticed the taxicab driver into the District of Columbia by false representations was an agent of appellant and that the service of the attachment had been arranged for in advance. These inferences, indeed, are not seriously disputed by plaintiff. It only urges that it had a right to do what it did. But both reason and authority support the view that such methods of securing service of process or of an attachment constitute deceit. The law does not sanction a practice of luring a person into another jurisdiction or sending his property there by false statements and then taking advantage of the situation by the use of legal process.[2] Furthermore, the fact that appellant as a common carrier regularly sent its taxicabs into this jurisdiction would not change the effect of securing the presence of the cab in the District by misrepresentation on this particular occasion.[3] While it is not bad faith to take advantage of the usual course of business, the fact remains that the cab was driven into the jurisdiction on this occasion solely because of the trick practiced by appellant's agents.

Appellant next urges that even if the service of the attachment was improper appellee waived any irregularity by having the attachment dissolved and cash substituted for the taxicab. Decision on this point has been complicated by the procedure followed in dissolving the attachment. The statute, Code 1940, § 16—310, provides that where personal property is attached the same may be released upon the filing of a surety bond, the form of which is specified in the code. Such form of bond provides that in consideration of the discharge of the property from the custody of the marshal a defendant and his surety appear, and

---

[2] Fischer v. Munsey Trust Company, 44 App.D.C. 212; Cavanagh v. Manhattan Transit Co., C.C.D.N.J., 133 F. 818; Frawley, Bundy & Wilcox v. Pennsylvania Casualty Co., C.C.M.D.Pa., 124 F. 259; Chubbuck v. Cleveland, 37 Minn. 466, 35 N.W. 362, 5 Am.St.Rep. 864; Blair v. Turtle, C.C.D.Neb., 5 F. 394; Steiger v. Bonn, C.C.D.N.J., 4 F. 17; Kizer v. George, 10 Ohio Dec. 218.

[3] Ultcht v. Ultcht, 96 N.J.Eq. 583, 126 A. 440; cf. Sessoms Grocery Co. v. International Sugar Feed Co., 188 Ala. 232, 66 So. 479; Case v. Smith, Lineaweaver & Co., C.C.E.D.N.Y., 152 F. 730; Pakas v. Steel Ball Co., 34 Misc. 811, 68 N.Y.S. 397.

submitting to the jurisdiction of the court, agree to perform the judgment of the court. Here no bond was actually filed but the taxicab was released to appellee and cash deposited in lieu thereof under the authority of an order requested by appellee and signed by the trial court providing as follows: "In consideration of the discharge from the custody of the U. S. Marshal of the property seized by him upon the attachment sued out against the defendant on the 5th day of April, 1948, in the above entitled cause, appearing and submitting to the Court, it is this 17th day of April, 1948, hereby Ordered that (blank) place the sum of Six Hundred Fifty and no/100 Dollars ($650.00) on deposit with the Clerk of this Court to cover and perform the judgment of this case whatever said judgment may be at the rendering thereof."

Such method of procedure was highly irregular but since appellee accepted the return of the taxicab and made the cash deposit under the terms of the court order we hold that he has waived such irregularity and that the case should be decided as though the bond provided for in the code, together with the stipulations provided for therein, had been duly filed.

Even on this assumption, however, we have concluded that the "bond", or the cash deposited in lieu thereof should be released from the custody of the trial court. We so hold in spite of authority to the effect that once a "dissolution bond" or other undertaking releasing the property has been executed everything to do with the original attachment is withdrawn from consideration.[4] In the cases so holding no deceit was involved. Other authorities, discussing fraud in levying the attachment, characterize the attachment levy as "void"[5] and where the levy is void it is held that the bond which discharges the attachment is not binding because it is without consideration.[6] The same result has been reached when the attachment was contrary to statute.[7]

We base our conclusion, however, upon the fundamental principle that no court should exercise its jurisdiction in aid of artifice or deceit. The matter goes beyond mere litigation between private parties. It involves, indeed, the process of the court. That process must always be vindicated and protected from the taint of illegality and deceit.

Our views are well expressed in Townsend v. Smith, 47 Wis. 623, 3 N.W. 439, 440, 32 Am.Rep. 793. That was a case in which it was decided that when a defendant is induced by deceitful representations to come within the jurisdiction of the court, service of process upon him will be set aside even after he has made a voluntary general appearance. In so deciding the court said:

"This remedy is not given upon the ground that, by reason of the fraud, the court did not get jurisdiction of the person of the defendant by the service, but upon the ground that the court will not exercise its jurisdiction in favor of the plaintiff, who has obtained service of his summons by unlawful means. When that fact is made to appear—especially if the defendant has been guilty of no laches—the court should vindicate the integrity of its process by setting aside the service and turning the plaintiff out of court as a punishment for his gross fraud.

"As already observed, courts have uniformly so proceeded in such cases, and we do not find that any court has ever stopped to inquire, under such circumstances, whether the appearance of the defendant is general or special. Such a case is entirely unlike one in which there has been a failure of proper service of process, for there the failure affects only the defendant, while here the fraud affects the integrity of the process of the court. Surely a general appearance to the action ought not to bar the court from vindicating the integrity of its own process, * * *."

Affirmed.

---

[4] Barry v. Foyles, 1 Pet. 311, 7 L.Ed. 157; Ferguson v. Glidewell, 48 Ark. 195, 2 S.W. 711.

[5] 1 Wade, Attachments, § 130, and cases cited therein.

[6] New York Casualty Co. v. Lawson, 160 Tenn. 329, 24 S.W.2d 881; Sloan v. Young, 86 Mont. 414, 284 P. 131.

[7] Pacific National Bank of Boston v. Mixter, 124 U.S. 721, 8 S.Ct. 718, 31 L.Ed. 567.